**In re N. M.[1], Debtor.**

**N. M., Plaintiff,**

**v.**

**Educational Credit Management Corporation, Defendant**

**Bankruptcy No. 02–11537 B.**
**Adversary No. 02–1145 B.**

United States Bankruptcy Court,
W.D. New York.

June 1, 2005.

---

1. Unfortunately, a stigma often attaches to even the suggestion of mental illness. For this reason, the court has honored the request of debtor's counsel, that her client's name be excluded from any published decision in this case. Instead, the title of this opinion identifies the debtor only by her initials.

508

Jeffrey Freedman Attorneys at Law (Regina Walker, Esq., of counsel), Buffalo, NY, for debtor.

Damon & Morey LLP (Stephen M. O'Neill, Esq., of counsel), Buffalo, NY, for trustee.

## DECISION AND ORDER

CARL L. BUCKI, Bankruptcy Judge.

In this adversary proceeding, the plaintiff seeks to discharge her student loans on the basis that payment would adversely impact her psychiatric health. Although this court understands how the burden of debt repayment may become a source of stress, the potential for such stress does not by itself satisfy the stringent prerequisites for the discharge of a student loan.

■ This court previously granted an order discharging the debtor from all dischargeable debts. Pursuant to 11 U.S.C. § 523(a)(8), however, such an order will not operate to discharge a student loan, "unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." Under the standard established in *Brunner v. New York State Higher Education Services*, 831 F.2d 395, 396 (1987), hardship occurs only when the debtor makes a three-part showing: "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the

debtor has made good faith efforts to repay the loans."

The debtor is an attorney. She claims, however, that due to a psychiatric condition, she can no longer handle the stress of private practice. At the time of trial, the debtor was employed in the development office of a cultural organization, where she earns an annual salary of approximately $28,000. The debtor has no dependants, but lives by herself in an apartment in the town of Grand Island, New York.

The debtor graduated from college in 1980 and from law school in 1984. To finance her education, she obtained student loans totaling $22,500. On various occasions during the past twenty years, the repayment of these obligations was deferred, and the loans were consolidated, assigned, and restructured. Altogether, on account of her student loans, the debtor has made payments that exceed the dollar amount of her original indebtedness. Nonetheless, due to the impact of interest accruals, the debtor still owed an outstanding balance of $41,850.80 to the Educational Credit Management Corporation, as of the day of trial.

Pursuant to the William D. Ford Direct Loan Program, the debtor is eligible to participate in an extended repayment plan. As of the trial date, available options included a plan for repayment over ten years at a monthly rate of $513.30; an extended plan for a twenty-five year term with monthly payments of $329.97; and a graduated plan requiring initial monthly payments of $287.72, but with provision for increasing payments over the remaining term of twenty-five years. If the debtor had chosen the extended option, she could have satisfied the indebtedness by means of an annual commitment of less than $4,000.

The parties presented evidence and argument about many of the expenditures that the debtor had included in her budget. For example, counsel for the Educational Credit Management Corporation questioned various recreational expenses, seemingly high expenditures for the care of a pet cat, non-traditional health care expenditures, and an apartment lease at a cost of approximately $700 per month. The creditor also demonstrated that the location of the debtor's residence had limited her access to public transportation and had necessitated additional expenses of transportation.

■ In the view of this court, the debtor fails to satisfy the first prong of the test in *Brunner v. New York Higher Education Services*. Accordingly, the court need not now consider either of the other two requirements of that case.

■ It is not the function of this court to micro-manage a debtor's budget or to control any particular item of expense. Rather, under the first prong of the *Brunner* test, the central issue is whether repayment of the student loan would preclude the debtor from maintaining a minimal standard of living. Here, the creditor presented evidence that for 2004–2005, the Department of Health and Human Services has set a poverty guideline of $9,310 for a family of one individual. In the present context, this court does not need to decide whether the poverty guideline serves to define an absolute minimal standard of living. With an annual income approximately $19,000 greater than the poverty standard for her family size, however, the debtor would appear to earn sufficient income both to pay the student loan and to enjoy some discretionary expenditures in excess of her minimal needs. Indeed, the debtor testified that between 1995 and 2000, she made monthly payments of $337.04 on account of her student loan, all at a time when her yearly

income averaged less than the debtor's present compensation. Unless the debtor can demonstrate extraordinary circumstances, I must find that the debtor earns sufficient income both to pay $4,000 per year on account of her student loan and to maintain a minimal living standard. The issue, therefore, is whether such extraordinary circumstances exist.

The debtor's primary contention is that her psychiatric health might be affected adversely if she were compelled to repay the student loan. The debtor testified that she has suffered from a depressive disorder, as well as from anxiety and panic attacks. These conditions have required hospitalization, as well as ongoing treatment by a psychiatrist. As the debtor's treating physician, Dr. Wendy Weinstein confirmed a diagnosis of depression with a suicidal ideation and anxiety. Having observed an improvement in the debtor's mental health after termination of her practice, Dr. Weinstein expressed concern that a return to the legal profession could adversely affect the debtor's mental health. Additionally, Dr. Weinstein identified a high risk of mental illness, in the event that the debtor were forced to change her current pattern of discretionary spending.

The Educational Credit Management Corporation presented the expert testimony of Dr. Brian Joseph, a physician with 29 years of experience in the practice of psychiatry. Based on his examination of the debtor and of her medical records, Dr. Joseph concluded that the debtor was capable of returning to the practice of law, and that the debtor's decision to terminate her legal practice was a matter of choice rather than medical necessity. Finally, Dr. Joseph stated that it would be preposterous to say "that unless she lives in the circumstances she has now," the debtor would risk a deterioration of her mental health.

Counsel devoted considerable argument to the question of whether the debtor could return to the practice of law. This issue might hold significance if the court were inclined to predicate its decision on *Brunner's* second prong, namely whether circumstances indicate that the debtor's state of affairs is likely to persist. Even as to that issue, the Bankruptcy Code imposes no obligation to accept future employment that would be detrimental to the health or safety of a particular individual. Because the first prong of *Brunner* will determine the outcome of the present dispute, however, the court does not need to decide whether the debtor could resume the stressful practice of law.

The first prong of *Brunner* considers whether the debtor can maintain a minimal standard of living, "based on current income and expenses." 831 F.2d at 396. At the present time, the debtor enjoys an income that is stable and that exceeds her previous level of earnings from the practice of law. Essentially, prior experience shows that for this debtor, the resumption of her legal profession would entail greater risk and the probable realization of less income. For this reason, the court attaches no significance to the possibility of legal practice, even if the debtor's health would allow it. Rather, in this case, the critical issue is whether the debtor's mental health can tolerate the budgetary adjustments needed to effect loan repayment from current income.

The debtor's mental health might well benefit from the avoidance of stress resulting from payment of her student loan obligation. Unfortunately, this fact provides insufficient justification to disregard the fundamental standard of the first prong of *Brunner*. In the present instance, no one suggests that the debtor

maintains a lifestyle that is luxurious or excessive. Indeed, the debtor presents a fair and reasonable budget. Rather, she fails to satisfy *Brunner's* first prong, because even reasonable expenses can exceed those which are necessary for a minimal standard of living.

■ As the plaintiff in this adversary proceeding, the debtor carries the burden to demonstrate that excepting the student loan from discharge would "impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). *See In re Maulin,* 190 B.R. 153, 156 (Bankr.W.D.N.Y.1995). Presently, the debtor earns income that exceeds the poverty guideline by a factor of more that two and one-half. The debtor does not satisfy her burden of proof merely by establishing a budget and daring the defendant to show the unreasonableness of her expenses. Of course it is reasonable to want a comfortable home, reliable transportation, cultural enrichment, and recreation. However, the controlling standard of *Brunner* does not incorporate these considerations. Rather, the test is whether repayment of the student loan will preclude a minimal standard of living. Although medical needs may necessitate additional expenditures to satisfy that minimal standard, the debtor carries the burden to show that any such additional expenditure is actually required for that purpose. Here, where income exceeds the poverty guideline by such a large multiple, the proof provides an insufficient demonstration that the necessities of the debtor's circumstances would preclude payment of her outstanding educational loans.

Life is filled with many sources of stress. Because no one can eliminate every stress, mental health must incorporate the ability to cope with and to respond to unavoidably stressful circumstances. While allowing the debtor to discharge many other sources of economic stress, the Bankruptcy Code creates an exclusion for the stressful repayment of student loans. In the present instance, section 523(a)(8) of the Bankruptcy Code essentially compels the debtor to address rather than to avoid the challenge of student loan repayment. The court may discharge a student loan only when payment would necessarily impair the debtor's ability to maintain a minimal standard of living. Because the debtor now derives sufficient income both to pay her student loan and to preserve a minimal living standard, her student loan obligations are not dischargeable in the present instance.

This court is obliged to apply the standard that the Second Circuit adopted in its decision in *Brunner v. New York State Higher Education Services,* 831 F.2d 395 (1987). Accordingly, for all of the reasons stated herein, this court must grant judgment to the Educational Credit Management Corporation.

So ordered.